IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RICHARD RICHARDSON,                    *

     Plaintiff,                    *

vs.                                    *          CASE NO. 4:08-CV-91 (CDL)

RALPH B. JOHNSON, *et al.*,             *

     Defendants.                   *

---

O R D E R

Plaintiff was a pretrial detainee in the Muscogee County Jail when Defendant Mark Cameron, a Muscogee County deputy sheriff, allegedly punched him in the face.  Plaintiff contends that the punch constituted excessive force in violation of his Fourteenth Amendment rights.  Plaintiff also makes various claims against Defendants under Georgia law.  Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 40).  For the reasons set forth below, the motion is granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is

viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

During the relevant time frame, Defendant Ralph Johnson was the Muscogee County Sheriff. Johnson was not present at the jail when the incident at issue in this action occurred. Defendant Mark Cameron is a Muscogee County deputy sheriff. Plaintiff sues Johnson and Cameron in their individual capacities only. Defendant Western Surety Company provided a surety bond for Johnson, which also covered his deputies. Johnson is the principal, and Western Surety is the surety on the bond. Plaintiff initially included as Defendants Columbus Consolidated Government and Steve McDowell. Plaintiff stipulated to the dismissal of those Defendants.

At approximately 1:00 a.m. on January 28, 2007, Columbus police officers arrested Plaintiff and three of his friends for disorderly conduct at Oxygen Club in Columbus. Plaintiff and his friends were

handcuffed and transported to the Muscogee County Jail, arriving at approximately 1:40 a.m. When they arrived at the jail, a Columbus police officer removed the handcuffs, and Cameron escorted Plaintiff into the jail intake room. Plaintiff's property was inventoried by Cameron and Deputy Suli Sene. When asked to empty his pockets, Plaintiff dropped a large set of keys on the table, and Cameron told him not to throw the keys. Plaintiff said, "Man, Goddamn," and Cameron replied, "Ain't no Goddamn." (Pl.'s Dep. 179:15-16, Feb. 13, 2009.) Plaintiff began laughing at one of his friends, and then he asked if he could use the restroom. While in the restroom, Plaintiff began singing "Cotton-Eyed Joe" loudly enough for people outside the restroom to hear him.

According to Plaintiff, Sergeant Gifford Anthony—Cameron's supervisor—opened the restroom door and asked Plaintiff if he was interested in getting out of jail that night, to which Plaintiff said yes. Anthony responded, "Well, if you are, then shut your fucking mouth, because if you don't, we're going to find a cell and we're going to put you there and leave you there." (*Id.* at 188:1-4.) Anthony further stated, "Now shut your fucking mouth."[1] (*Id.* at 188:7.) Plaintiff replied, "Fuck you." (*Id.* at 188:10-11.) Anthony said, "Fuck, yeah" and "popped" the door open.

---

[1] It is undisputed that Anthony was disciplined for his use of profanity in dealing with Richardson.

(*Id.* at 88:12-16.) Plaintiff believed that "from all the popping of the door the other [deputies] thought [Plaintiff] was getting hostile," and Anthony grabbed Plaintiff by the shirt and other deputies "bum rushed" Plaintiff and escorted him to Holding Cell 11 ("HD-11"). (*Id.* at 189:8-12.) Deputies held Plaintiff by his arms and his neck. (*Id.* at 192:16-20.) Plaintiff told the deputies he had not done anything. Plaintiff's friend, Jade Kirkland, was standing in the hall and saw the deputies taking Plaintiff to HD-11. Kirkland told the deputies he would straighten Plaintiff out, and he told Plaintiff to cooperate with the deputies.

The deputies put Plaintiff in HD-11 and left Cameron alone in the cell with him with the door open. At the time, Plaintiff was six feet tall and weighed approximately 200 pounds, and Cameron was the same height but weighed a little more than 300 pounds. Cameron told Plaintiff to kick off his shoes because the jail's standard procedure required inmates placed in holding cells to remove their shoes. According to Plaintiff, he kicked off one of his shoes, and it hit Cameron—who was standing four or five feet away—on his foot or ankle.[2] Cameron perceived Plaintiff's behavior as threatening, and he punched

---

[2]Cameron contends that the shoe hit him in the chest area and that Plaintiff came toward him in an aggressive manner, but he accepts for purposes of summary judgment Plaintiff's version of the facts.

Plaintiff in the face one time.[3] Plaintiff went up against the wall of the cell, then sat down on the bench at the back of the cell. He did not black out. None of the deputies offered Plaintiff medical treatment. Cameron left the cell, and he did not know at the time whether Plaintiff was injured as a result of the punch.

Around 3:00 a.m., Plaintiff's mother came to bond him out of jail. Plaintiff told his mother that a deputy had punched him in the face and that something was wrong with his jaw. According to Plaintiff, Sene told Plaintiff and his mother that Cameron was the deputy who had hit him and that in Sene's opinion, Cameron had "no business doing that to him."[4] (*Id.* at 224:7-8.) Plaintiff's mother told Lieutenant John Fitzpatrick, the shift supervisor, about the alleged assault, and Fitzpatrick told Anthony about Plaintiff's allegations. Fitzpatrick informed Plaintiff's mother of the complaint process, and Plaintiff was released from jail.

Plaintiff's mother took him to St. Francis Hospital, where it was determined that Plaintiff had a fractured mandible. Nurses from the hospital contacted the sheriff's office, who sent patrol officers to take a report. The officers spoke with Plaintiff and his mother,

---

[3]Cameron asserts that he struck Plaintiff with an open hand rather than a closed fist, but he accepts for purposes of summary judgment Plaintiff's version of the facts.

[4]There is no evidence in the present record that Sene actually witnessed Cameron strike Plaintiff.

as well as Fitzpatrick and Anthony, and they prepared an incident report, which stated that Plaintiff reported that Cameron had punched him in the mouth and that Plaintiff was handcuffed at the time. (Ex. 20 to Anthony Dep., Jan. 29, 2009, Miscellaneous Incident Report at COL00029.) It also stated that the investigating officers did not observe any visible marks, bruising, or swelling around Plaintiff's mouth. (*Id.*) Finally, the report stated that Anthony told the investigating officers that Plaintiff was verbally combative and uncooperative during the intake process; that Plaintiff kicked off his shoe at Cameron, hitting him in the chest and face; and that Cameron slapped Plaintiff with an open hand. (*Id.*)

In addition, Cameron, Anthony, and other deputies who witnessed the incident completed "Use of Force" reports documenting what occurred. Anthony, who did not see Cameron strike Plaintiff, prepared a Supervisor's Field Use of Force Report, which found that Plaintiff was very intoxicated and disruptive, that Plaintiff hit Cameron with his shoe and moved toward him "in a combative manner," and that Cameron struck Plaintiff with an open hand. (Ex. 23 to Anthony Dep., Supervisor's Field Use of Force Report at COL00043.) Anthony concluded that Cameron had not deviated from agency policies or rules and that his tactics should not be reviewed. (*Id.*) Anthony also found that the use of force was justified. (*Id.* at COL00044.) Anthony did not speak with Plaintiff or review any videotape of the

incident before preparing the report. (Anthony Dep. 115:4-7.) Upon receiving Anthony's report, Fitzpatrick, who was the shift supervisor when the incident occurred, prepared a Supervisor's Field Use of Force Report and found, based on the written reports submitted by the deputies, that the use of force was justified. (Ex. 63 to Fitzpatrick Dep., Feb. 5, 2009, Supervisor's Field Use of Force Report.) Fitzpatrick did not speak with Plaintiff or the officers who interviewed Plaintiff at the hospital, and he did not review any videotape of the incident before preparing the report. The jail commander ultimately reviewed and signed off on the Use of Force reports.

The Muscogee County Sheriff has a policy regarding use of force in the jail. Under the policy in effect at the time of the incident giving rise to this action, that policy provided that detention officers

> may use their fist . . . only when one or more of the following circumstances exist, and then only to the extent that such force is reasonable.
>
> 1.      When an inmate in custody attempts to escape.
>
> 2.      When two or more persons assault an officer.
>
> 3.      When an individual of obvious physical superiority or aggressiveness assaults an officer.
>
> 4.      When an individual commits or is attempting to commit an attack on a third party.

(Ex. 11 to Anthony Dep., Use of Force Policy ¶ II.E.)  The policy also provides that, "Under no circumstances are staff members to use excessive force to control inmates." (*Id.* ¶ II.H.)  Punishment for excessive force includes "possible suspension, termination and/or prosecution." (*Id.*)  During his deposition, Cameron agreed that the Use of Force policy would not permit striking Plaintiff with a closed fist, even under his version of the facts, in which Plaintiff kicked his shoe at Cameron's chest and moved toward Cameron in a combative manner. (Cameron Dep. 154:23-155:3, Feb. 20, 2009.)

DISCUSSION

Plaintiff seeks to hold Cameron and Johnson liable in their individual capacities under 42 U.S.C. § 1983 ("§ 1983") for violating Plaintiff's right to be free from excessive force.  Plaintiff also pursues various Georgia law claims against Defendants.  Each of those claims is discussed more fully below.  Plaintiff initially sought to hold Defendants liable for depriving Plaintiff of his Fourteenth Amendment and state law rights to adequate medical care, but he expressly abandoned those claims in his response to Defendants' summary judgment motion. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. 2.)  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's deprivation of medical care claims.

## I.  § 1983 Excessive Force Claims

To make a case under § 1983, Plaintiff must prove that Cameron and Johnson, acting under color of state law, deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or a federal law.  *See* 42 U.S.C. § 1983.  It is undisputed Cameron and Johnson acted under color of state law during the events giving rise to this action.  Plaintiff contends that Cameron and Johnson violated Plaintiff's right to be free from excessive force.  Plaintiff was a pretrial detainee at the time of the incident giving rise to this lawsuit.  Therefore, his claims arise under the Fourteenth Amendment to the U.S. Constitution.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1215 (11th Cir. 2009) (per curiam).

### A.  Qualified Immunity

Both Cameron and Johnson claim that they are entitled to qualified immunity as to Plaintiff's § 1983 excessive force claims. Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law.  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the

federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).

Plaintiff agrees that Cameron and Johnson were acting in the scope of their discretionary duties when they took the challenged actions. Thus, Plaintiff must show that their conduct violated clearly established law. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). In determining whether an official violated clearly established law, there are two key questions: (1) do the facts alleged show that the official's conduct violated a constitutional right? and (2) was the right clearly established at the time of the official's action? *Id.* at 1326. However, in an excessive force case such as this one, "a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights have been violated." *Fennell*, 559 F.3d at 1216-17. The rationale behind this rule is that, "for an excessive-force violation of the Eighth or Fourteenth Amendments, 'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.'" *Id.* at 1217 (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)).

Plaintiff contends that Cameron violated his constitutional right to be free from excessive force when he punched Plaintiff in

the face.  He maintains that Johnson may be held liable for Cameron's actions because he ratified Cameron's actions.

## B.    § 1983 Claim Against Cameron

Plaintiff claims that Cameron used excessive force when he punched Plaintiff in the face.  "A jailor's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it 'shocks the conscience.'"  *Fennell*, 559 F.3d at 1217 (quoting *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)); *accord Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).  In this context, the phrase "shocks the conscience" means that force is "applied 'maliciously and sadistically to cause harm.'"  *Fennell*, 559 F.3d at 1217 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  On the other hand, "use of force does not 'shock the conscience' if it is applied 'in a good-faith effort to maintain or restore discipline.'"  *Id*. (quoting *Hudson*, 503 U.S. at 7).  In determining whether the force applied violates the Fourteenth Amendment, the Court must consider

> a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response.

*Id.* (citing *Cockrell*, 510 F.3d at 1311).  The Court must also "'give a wide range of deference to prison officials acting to preserve

11

discipline and security, including when considering decisions made at the scene of a disturbance.'" *Id.* (quoting *Cockrell*, 510 F.3d at 1311). Finally, the Court must examine the facts "as reasonably perceived by [Cameron] on the basis of the facts known to him at the time." *Id.*

Here, even under Plaintiff's version of the facts, Cameron reasonably perceived Plaintiff's behavior at the jail during the course of the night as disruptive and disrespectful. When Plaintiff kicked his shoe at Cameron and hit him, Cameron reasonably perceived that Plaintiff was creating an additional disturbance and that some force would be required to quell it. *See Cockrell*, 510 F.3d at 1311 (finding that deputy legitimately used force when he shoved inmate who was shouting); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (concluding that deputy legitimately grabbed inmate by throat and pushed him against bars because inmate was shouting and demanding to be let out). Prison guards such as Cameron "may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Accordingly, the Court cannot conclude that it was unreasonable for Cameron to believe that *some* force was necessary under the facts presented here. Thus, this factor weighs against finding a constitutional violation.

12

Turning to the relationship between the need for force and the amount of force used, though the Eleventh Circuit Court of Appeals has held that some force may be used to control an unruly inmate, the force used must be proportionate to the need to restore order. *Cockrell*, 510 F.3d at 1312; *see also Danley,* 540 F.3d at 1307 (finding that short burst of pepper spray was not disproportionate to need to control inmate who failed to obey jailer's orders); *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (finding that while use of electronic shield to incapacitate inmate refusing to submit to handcuffing was justified, continued beating of inmate after he was incapacitated was not justified). In *Cockrell*, for example, the Eleventh Circuit concluded that an "open-handed push" was "not disproportionate to the need to restore order when dealing with a drunk and boisterous inmate," particularly because it was "near to the minimum amount" of force an officer can employ. *Cockrell*, 510 F.3d at 1311. Here, however, under Plaintiff's version of the facts, Plaintiff was only mildly disruptive, and Cameron did not use "near to the minimum amount" of force he could employ. Rather, he punched Plaintiff in the face. That action was directly contrary to the jail's Use of Force policy, which explicitly provides that detention officers may *only* use a fist to subdue an inmate under circumstances that did not exist here. *Cf. Hope v. Pelzer*, 536 U.S. 730, 744 (2002) (looking, in part, to prison regulation in deciding whether

13

officers violated clearly established law in handcuffing inmate to hitching post for seven hours); *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (noting that prison regulations governing conduct of correctional officers are relevant in determining whether force used was excessive).  For all of these reasons, the Court concludes that, under Plaintiff's version of the facts, the amount of force Cameron used was disproportionate to the need for force.  Accordingly, this factor weighs in favor of finding a constitutional violation.

With regard to the extent of the injury inflicted upon Plaintiff, where an officer cannot reasonably anticipate that his actions will result in a severe injury, the "extent of injury" factor is not dispositive.  *Cockrell*, 510 F.3d at 1311.  In *Cockrell*, for example, the jailer pushed a disruptive inmate with an open hand and could not reasonably anticipate that such use of force would result in the inmate breaking his hip and wrist.  *Id.; see also Fennell*, 559 F.3d at 1219 (finding that injuries from single kick to face did not justify finding unreasonable force where officer intended to kick inmate's arm).  Here, however, under Plaintiff's version of the facts, Cameron delivered a punch to Plaintiff's face that was forceful enough to knock him off his feet.  Cameron could reasonably anticipate that such a punch would result in a severe injury, such as a broken jaw.  Therefore, this factor weighs in favor of finding a constitutional violation.

Next, the Court must consider the extent to which Plaintiff was a threat to the safety of jail staff and other inmates. Under Plaintiff's version of the facts, Plaintiff's threat to the safety of staff and inmates was minimal. Plaintiff was in a holding cell by himself and therefore did not pose a threat to other inmates. While the evidence suggests that Plaintiff was disruptive, it does not suggest that he posed a significant risk to the staff. Therefore, the Court concludes that this factor weighs in favor of finding a constitutional violation.

The final factor for the Court to consider is whether Cameron made any efforts to temper the severity of the force. A use of force is less likely to be considered malicious and sadistic if the officer takes prompt action to temper it. *Compare Cockrell*, 510 F.3d at 1312 (finding that jailers did not act maliciously and sadistically in part because they immediately summoned medical assistance for inmate who fell after jailer shoved him), *with Danley*, 540 F.3d at 1307-08 (concluding that though use of pepper spray on disruptive inmate was not excessive, officers' refusal to allow inmate to decontaminate after he had calmed was). Here, Cameron left HD-11 before he realized that Plaintiff was hurt. Cameron did not summon any medical attention for Plaintiff; he did not even look to see if Plaintiff was injured. Therefore, the Court concludes that this factor weighs in favor of finding a constitutional violation.

Considering all of the pertinent factors, the evidence viewed in the light most favorable to Plaintiff demonstrates that Cameron acted maliciously and sadistically when he punched Plaintiff. Therefore, Cameron's use of force shocks the conscience, and he is not entitled to qualified immunity at this stage of the litigation. Cameron's summary judgment motion is therefore denied.[5]

## C. § 1983 Claim Against Johnson

Plaintiff also contends that Johnson acted with deliberate indifference in his capacity as a supervisor. "Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). Here, it is undisputed that Johnson did not personally participate in any of the conduct giving rise to this action. Therefore, Plaintiff must establish that there is a causal connection between Cameron's conduct and Johnson's actions. To establish a causal connection, Plaintiff must either show (1) that Johnson was aware of "a history of widespread abuse"

---

[5]The Court notes that its ruling simply finds that genuine issues of material fact exist as to whether Cameron violated Plaintiff's clearly established right to be free from excessive force, and thus summary judgment is not appropriate. Cameron disputes Plaintiff's version of the incident, and if the factfinder accepts Cameron's version, it is likely that no constitutional violation occurred. However, at this stage of the proceedings, the Court must accept Plaintiff's version, not Cameron's, as true.

that put him "on notice of the need to correct the alleged deprivation," but he failed to do so; (2) that Johnson's custom or policy resulted "in deliberate indifference to constitutional rights;" or (3) that Johnson "directed [his] subordinates to act unlawfully or knew that [his] subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks omitted).

Here, Plaintiff pointed to no evidence of a history of widespread abuse that Johnson knew about and failed to correct. Plaintiff also cannot establish that any custom or policy of Johnson resulted in deliberate indifference to constitutional rights; indeed, Johnson's Use of Force policy was calculated to *prevent* constitutional deprivations by setting limits on the permissible use of force in the jail. Finally, Plaintiff has pointed to no evidence that Johnson directed Cameron to act unlawfully or that Johnson knew that his subordinates would act unlawfully and failed to stop them from doing so.

Plaintiff argues that Johnson ratified Cameron's use of force because Cameron's chain of command signed off on the supervisor's Field Use of Force report, which concluded that Cameron's use of force was justified. In other words, Plaintiff argues that Johnson knew or should have known that Cameron used excessive force against Plaintiff and that Johnson did nothing to correct it. However, the

Court cannot conclude that any clearly established law existed as of January 2007 making it a constitutional violation for a sheriff to rely upon a Use of Force report prepared by his subordinates under the circumstances presented here. The investigation included an interview of Plaintiff, and the Use of Force report included a description of the incident from Plaintiff's perspective. There is no evidence that there was a history of widespread abuse in the preparation of Use of Force reports that Johnson knew about and failed to correct. Furthermore, Johnson's own policy specifically forbade the type of conduct which Plaintiff contends occurred. For all of these reasons, Johnson is entitled to qualified immunity on Plaintiff's claims against him, and the Court grants Johnson's summary judgment motion.

**II. State Law Claims**

In addition to his § 1983 claims, Plaintiff also makes claims against Defendants under Georgia law. First, Plaintiff seeks to hold Cameron liable for assault and battery. Second, Plaintiff alleges that Cameron and Johnson failed to perform the duties of their offices faithfully and that the surety is therefore liable on the sheriff's bond.

A.   Assault and Battery Claims Against Deputy Cameron

Cameron contends that he is entitled to official immunity on Plaintiff's assault and battery claims. It is undisputed that

18

Cameron was engaged in a discretionary function when he took the action challenged here. Therefore, Plaintiff must demonstrate that Cameron acted with "actual malice or with actual intent to cause injury." *Selvy v. Morrison*, 292 Ga. App. 702, 703, 665 S.E.2d 401, 404 (2008) (internal quotation marks omitted). As discussed above, the evidence viewed in the light most favorable to Plaintiff demonstrates that Cameron acted maliciously and sadistically when he punched Plaintiff in the face. Therefore, the Court concludes that Cameron is not entitled to official immunity on the assault and battery claim, and his summary judgment motion is denied.

### B. Plaintiff's Breach of Bond Claim

Plaintiff seeks to hold Defendants liable for breach of bond. The parties agree that the sheriff had a bond as mandated by O.C.G.A. § 15-16-5. The parties also appear to agree that breach of the bond occurs when an injury is caused by a "failure to perform an official duty, or the improper or negligent performance of a duty imposed by law." *Culpepper v. U.S. Fid. & Guar. Co.*, 199 Ga. 56, 58, 33 S.E.2d 168, 170 (1945). The parties disagree, however, on whether a sheriff can be held liable on his bond for acts of his deputies committed outside his presence and without his knowledge. Plaintiff, citing a 1947 case construing a 1933 statute, argues that Johnson can be held liable on his bond for Cameron's acts, even though they were committed outside Johnson's presence. *Standard Sur. & Cas. Co. of*

*N.Y. v. Johnson*, 74 Ga. App. 823, 827-28, 41 S.E.2d 576, 580 (1947) (citing Ga. Code Ann. § 89-418 (1933)).

Under O.C.G.A. § 45-4-24 and its substantially similar predecessor, Ga. Code Ann. § 89-418, an official bond is:

obligatory on the principal and sureties thereon:

(1) For any breach of the condition during the time the officer shall continue in office or discharge any of the duties thereof;

(2) For any breach of the condition by a deputy, although not expressed in such bond, unless otherwise declared by law;

(3) For the faithful discharge of any duties which may be required of such officer by any law passed subsequent to the execution of such bond, although no such condition is expressed therein; or

(4) For the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform or by the improper or neglectful performance of those duties imposed by law.

However, the current version of the statute also provides:

No claim or cause of action shall exist against the bond, the surety, or the principal, and no claim or cause of action for indemnification by the surety against the principal shall exist, unless one of the following conditions exists:

(1) The principal personally benefits financially from the act complained of; or

(2) The principal was personally aware of and had actual knowledge of the act complained of; had actual knowledge that the act was illegal, contrary to law, or the breach of a duty imposed by law; and either acted to cause or failed to prevent the act complained of.

O.C.G.A. § 45-4-24(b). Here, there is no evidence that Johnson personally benefitted financially from Cameron's conduct. And, as discussed above, there is no evidence that Johnson either caused or failed to prevent Cameron's conduct. For these reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's breach of bond claim.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' Motion for Summary Judgment (Doc. 40). As to Plaintiff's claims against Cameron, the Court finds that Cameron is not, at this stage in the litigation, entitled to qualified immunity or official immunity, and his motion for summary judgment is therefore denied as to Plaintiff's § 1983 and assault and battery claims against him. Johnson is entitled to qualified immunity on Plaintiff's § 1983 claim, and Defendants are entitled to summary judgment on Plaintiff's breach of bond claim.

IT IS SO ORDERED, this 23rd day of June, 2010.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE